The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn as well as the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification of the award of attendant care to plaintiff.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff-employee at all relevant times.
3. Companion Property and Casualty Company provided workers compensation insurance for defendant-employer at all relevant times.
4. Plaintiffs average weekly wage at all relevant times was $300.00, yielding a compensation rate of $200.00.
5. Plaintiff sustained an injury by accident on October 7, 1997 when he fell approximately 70 feet onto a concrete floor in the course and scope of his employment with defendant-employer.
6. Plaintiff has been paid temporary total disability benefits from October 8, 1997 through the present and continuing.
7. Plaintiff was an illegal alien at the time of his injury by accident.
8. The issues to be determined by the Commission are as follows:
 a) Whether plaintiff is barred from receiving workers compensation benefits as a result of his status as an illegal alien?
 b) Whether plaintiff is entitled to receive any workers compensation benefits, and, if so, what benefits?
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was a thirty-eight year old man at the time of the hearing before the Deputy Commissioner. He received the equivalent of a sixth grade education in Mexico, his native home. Plaintiff does not speak, read, or write English.
2. On October 7, 1997, plaintiff fell approximately 70 feet onto a concrete floor while in the course and scope of his employment with defendant-employer. Plaintiff was unconscious at the scene and was transported to Carolinas Medical Center where he was diagnosed with a severe traumatic brain injury with hemorrhage and sheer injury. He also sustained multiple rib fractures, a kidney contusion, and a pneumothorax.
3. Plaintiff remained at Carolinas Medical Center until November 7, 1997, at which time he was transferred to Charlotte Institute of Rehabilitation under the care of Dr. James T. McDeavitt. Plaintiff stayed at the Charlotte Institute of Rehabilitation until December 3, 1997, when he was transitioned from the inpatient program to the outpatient program and remained under the care of Dr. McDeavitt.
4. When Dr. McDeavitt discharged plaintiff on or about December 3, 1997, he indicated that plaintiff should have 24-hour supervision, and should not drink alcohol, drive, or cook.
5. Dr. Lynda G. Johnson, a neuropsychologist, completed a neuropsychological evaluation. Dr. Johnsons findings indicated plaintiff had sustained a severe traumatic brain injury and he has had good recovery. She found plaintiff exhibiting significant cognitive deficits in attention skills, selected executive skills, memory, and performance skills. She indicated plaintiff had a relative strength in the area of verbal intellectual abilities and that his performance in that area suggested cognitive deficits and indicated a significant decline from his pre-injury level of functioning. Plaintiffs math skills were also significantly below average.
6. Plaintiff was seen and evaluated by Dr. Thomas Gualtieri of North Carolina Neuropsychiatry. Dr. Gualtieri found plaintiff to have weakness and decreased coordination in the left side, including left facial weakness, and he agreed with Dr. McDeavitts findings.
7. Plaintiff was also seen and evaluated by Dr. David N. DuPuy, an orthopedist. Dr. DuPuy agreed with plaintiffs other treating physicians as to his diagnosis and treatment.
8. Following his release, plaintiff was cared for by his brother, Jose Ruiz. Jose Ruiz came to North Carolina after plaintiffs injury. He came only because plaintiff has nobody else to care for him. Jose Ruiz has a family of his own and wants to return to his family in Mexico but cannot because plaintiff needs his assistance.
9. Mr. Jose Ruiz indicated that plaintiff cannot take care of himself. Mr. Ruiz has to cook, clean, wash, shop, and pay bills, among other things, for plaintiff. He turns on plaintiffs shower and has to assist plaintiff into the shower. Plaintiff can bathe himself while he sits on a stool. Mr. Ruiz indicated that plaintiff cannot cook because he will leave the stove on or forget about the food on the stove. Plaintiff needs assistance walking because he is not stable on his feet and may fall at any time.
10. Mr. Jose Ruiz indicated that he is not able to hold a full time job because it is unsafe to leave plaintiff at home for a long period and he therefore works four or five hours per day, five days a week, and otherwise he is always with plaintiff.
11. Dr. McDeavitt has indicated that plaintiff is able to stay at home by himself. Dr. McDeavitt formed this opinion because plaintiff and Jose Ruiz have told him that plaintiff is left home by himself for limited periods out of necessity and so far nothing has happened. Jose Ruiz does not feel that it is safe to leave plaintiff alone, but feels he has no choice but to leave plaintiff alone while at work. Jose Ruiz, plaintiff, and Jose Ruizs family have to be supported and Jose Ruiz must work to provide this support.
12. Plaintiff is in need of attendant care and defendants have not provided it.
13. Patrick Clifford, a certified senior disability analyst holding a Master of Science degree with emphasis on vocational rehabilitation and disability evaluation, performed a vocational assessment of plaintiff and it was his opinion that plaintiff would not be successful in any attempt to locate any employment because of his physical limitations, cognitive deficits, lack of transferable skills, and education.
14. At the hearing before the Deputy Commissioner in this matter it was apparent that plaintiff did not have any use of his left hand and arm, and very little use of his left leg. Plaintiff has to drag his left leg behind him as he walks. Plaintiff has limited use of the entire left side of his body.
15. Following the accident it was also noted that plaintiff would easily lose his temper. This was something that he did not do prior to his injury.
16. Paula Medina, a registered nurse with a Masters Degree in health administration who also is a certified life planner, drafted a life care plan for plaintiff at the request of Patrick Clifford. As a part of this plan, she indicated that plaintiff would need attendant care for the remainder of his life. Jose Ruiz has been providing care to plaintiff but will be unable to continue if he is not paid.
17. Paula Medina testified that, if purchased through an agency, the level of attendant care plaintiff requires would cost $13.00 to $15.00 an hour. An individual hired apart from an agency would require a little above minimum wage, but in addition social security and tax expenses would be necessary.
18. All the evidence presented in this matter indicates that plaintiff has recuperated somewhat since his injury but that plaintiff is not employable as a result of his injury. According to Dr. McDeavitt, plaintiff reached maximum medical improvement as of February 9, 1998.
19. Defendant-employer benefited from plaintiffs work status up to the time of the injury.
20. As a result of the October 7, 1997 injury by accident, given plaintiffs vocational skills and physical limitations, plaintiff has been, and remains, incapable of earning wages with defendant-employer or in any other employment since October 8, 1997.
 ***********
Based on the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On October 7, 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. 97-2(6).
2. Under the Act, plaintiff is entitled to receive workers compensation benefits notwithstanding his illegal alien status at the time of the injury by accident, which occurred in the course and scope of his employment with defendant-employer. An "employee is defined by the Act to mean "every person engaged in an employment or contract or hire or apprenticeship, express or implied, oral or written, including aliens, and also minors,whether lawfully or unlawfully employed. . . . N.C. Gen Stat.97-2(2) (Emphases added).
3. Given plaintiffs physical limitation and vocational skills, plaintiff is permanently and totally disabled as a direct result of his injuries, and he is not able to earn any income from any form of employment as a result of the disabilities he sustained as a result of his injury by accident. Plaintiff is entitled to weekly compensation at the rate of $200.00 per week beginning October 8, 1997 and continuing until plaintiffs death or further order of the Industrial Commission. N.C. Gen. Stat. 97-29.
4. Plaintiff is entitled to the payment of the medical expenses incurred for the treatment of the injuries he sustained, and any further treatment that tends to cure, give relief and/or lessen plaintiffs period of disability for the remainder of his life or until further order of the Industrial Commission. N.C. Gen. Stat.97-29; 97-2(19); 97-25.
5. As a result of the compensable injury, plaintiff is entitled to have defendants pay for attendant care services 16 hours a day, seven days per week for the period from December 3, 1997 to the present and continuing at the rate of $8.00 per hour to be provided by Jose Ruiz, subject to a deduction for any hours worked at outside employment. In the event that attendant care is provided in the future by someone other than Jose Ruiz, plaintiff is entitled to attendant care paid for by defendants at a level commensurate with the local market as well as the training of the care giver plaintiff requires. N.C. Gen. Stat. 97-2(19); 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorneys fees hereinafter approved, defendants shall pay plaintiff, for his permanent total disability, compensation at a rate of $200.00 per week from October 8, 1997 and continuing for the remainder of his life or until further order of the Industrial Commission. Any amount that has accrued shall be paid to plaintiff in a lump sum, subject to the attorneys fee hereinafter approved.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injuries when bills for the remainder of plaintiffs life, for so long as such evaluations, treatments, and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiffs period of disability.
3. Defendants shall pay for attendant care services 16 hours a day, seven days per week for the period from December 3, 1997 to the present and continuing at the rate of $8.00 per hour to be provided by Jose Ruiz, subject to a deduction for any hours worked at outside employment. In the event that attendant care is provided in the future by someone other than Jose Ruiz, defendant shall pay for plaintiffs attendant care at a level commensurate with the local market and the training of the care giver required.
4. A reasonable attorney fee in the amount of twenty-five percent of the compensation approved and awarded for plaintiff is approved for plaintiffs counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiffs counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiffs counsel.
5. Defendants shall pay the costs of this appeal.
This is the ___ day of August, 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER